UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LOCAL INTELLIGENCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HTC AMERICA, INC., et al.,<br><br>Defendants. | Case No. 5:17-cv-06437-EJD<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

Plaintiff Local Intelligence, LLC ("LI") filed the instant patent infringement suit against Defendants HTC America, Inc. and HTC Corporation (collectively, "HTC"), alleging that HTC infringed the claims of U.S. Patent Nos. 8,903,067 (the "'067 patent"), 9,219,982 (the "'982 patent"), and 9,084,084 (the "'084 patent") (collectively, the "Asserted Patents."). HTC now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss LI's infringement claims on the basis that the Asserted Patents fail to claim patent-ineligible subject matter under 35 U.S.C. § 101. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and VACATES the hearing set for April 12, 2018. For the reasons discussed below, the Court DENIES HTC's motion.

## I.  BACKGROUND

### A.  The Asserted Patents

The Asserted Patents are each entitled "Apparatus and Method for Automatically Refreshing a Display of a Telephone." The '067 patent was filed on June 22, 2006 and issued on December 2, 2014. The '084 and '982 patents are continuations of the '067 patent and share the

same specification. The '084 patent was filed on October 28, 2014 and issued on July 14, 2015. The '982 patent was filed on June 4, 2015 and issued on December 22, 2015.

The Asserted Patents generally relate to "automatically refreshing a display screen of a telephone." '067 patent, col. 1 ll. 7-9. According to the Background of the Invention section, telephones provide a wide variety of services, including "personal communications services" that provide calling or voice messaging functionality, "information services" that provide information about weather or traffic conditions, and "commercial services" that allow users to transfer funds, purchase movie tickets, or order merchandise. *Id.*, col. 1 ll. 11-17. In a typical telephone, users will access a particular service using a display panel and navigation keys. *Id.*, col. 1 ll. 18-19. However, "[d]ue to the many available services, the user often has to navigate through many menu displays in order to find a desired service." *Id.*, col. 1 ll. 19-21.

The Asserted Patents purport to solve this problem by taking advantage of a specific user behavioral pattern: "[u]sers often access the same services at the same time every day, or use some services more routinely than others, and tend to do so at certain times of day more so than at other times." *Id.*, col. 1 ll. 22-24. For example, a user may use conferencing and collaboration services when she is in the office, but traffic conditions and roadside assistance services when she is driving. *See id.*, col. 4 ll. 27-35, 50-55. Accordingly, the Asserted Patents conclude, "there is a need to provide a solution for a telephone to automatically display services that are likely to be used at a given time and/or in a given location by a particular user." *Id.*, col. 1 ll. 60-62.

The Asserted Patents accomplish this by storing mappings between specific locations or times and the communication services that should be displayed. Specifically, a "datastore" stores "functions," which "represent a given set of conditions associated with a user" and correspond to a particular set of communication services. *Id.*, col. 2 ll. 6-7. For example, one "function" could represent the user location of "office" and correspond to the services the user uses at the office. A second "function" could represent the user location of "home" and correspond to the services the user uses at home. *See id.*, col. 4 ll. 27-35, 50-55. Then, in order to "automatically display services that are likely to be used," the invention looks up which "functions" (and,

correspondingly, communication services) correspond to the current time or location, and refreshes the display with the corresponding communication services.

Figure 5 illustrates this solution in more detail:



Figure 5

A "function selector" connects to a "location server," which provides it with the current location of the telephone. *Id.*, col. 7 ll. 7-8. The function selector determines if the current location matches one or more locations for functions stored in the database, and selects the appropriate function. *Id.*, col. 7 ll. 10-13.

According to the specification, the function selector can connect to the location server in a variety of ways, including "over a network such as an IP based network, the Internet, a corporate VPN, or a cellular data network;" "over a WiFi hotspot, or a short-distance wireless network, such as a Bluetooth network;" or "over a global location satellite network, a cellular network, such as a Global System for Mobile Communications (GSM) network, or over a programming interface." *Id.*, col. 7 ll. 49-59. In addition, the location provided by the location server can take a variety of forms, including

> the name of a location, such as but not limited to a city, a building, or a neighborhood; a floor number of a building, an office number, a conference room number, or a cubicle number; the name or identifying information of a shopping mall, an airport, a hospital, a movie theatre, a freeway exit, or a train station; geographic information, such as longitude, latitude and altitude information; cellular coverage information, such as an identity of a radio base station; a location type, such as a vehicle, a train, a ferry, a mall, a government building, or a truck of a delivery service company; or the like.

*Id.*, col. 7 l. 60-col. 7 l. 3.

LI alleges that HTC infringes at least the first claim of each of the Asserted Patents. Dkt. No. 1 ¶¶ 19, 27, 38. Independent claim 1 of the '067 patent is representative:

> 1. A telephone having a display panel; a datastore including at least one function, wherein the at least one function comprises information relating to a current location o f a telephone and at least one other condition associated with a user of the telephone, wherein the at least one function is associated with at least one communication service; circuitry operable to connect the telephone to a location server to obtain a current location of the telephone; and a function selector programmable to refresh a screen on the display panel of the telephone to include at least one communication service associated with the function, based at least in part on a current location of the telephone.

*Id.*, col. 8 ll. 9-20.

## B.    Procedural History

LI initiated the instant suit on November 3, 2017. Dkt. No. 1. HTC responded by filing the instant motion on January 29, 2018. Dkt. No. 27.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 556-57, 127 S. Ct. 1955. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Case No.: 5:17-cv-06437-EJD
ORDER DENYING MOTION TO DISMISS

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion. However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-69 (9th Cir. 2001).

### B. Patent Eligibility at the Motion to Dismiss Stage

The ultimate question whether a claim recites patent-eligible subject matter under § 101 is a question of law. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) ("Patent eligibility under § 101 is an issue of law[.]"). However, the Federal Circuit has identified that there are certain factual questions underlying the § 101 analysis. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018).

A district court may decide patent eligibility at the Rule 12(b)(6) stage. *See, e.g.*, *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). However, a district court may only conclude that a patent fails to claim patent-eligible subject matter "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1125 (Fed. Cir. 2018). "If there are claim construction disputes at the Rule 12(b)(6) stage, [the Federal Circuit has] held that either the

court must proceed by adopting the non-moving party's constructions, . . . or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Id.* (internal citations omitted).

### C. Patent Eligibility Under § 101

#### i. The Mayo/Alice Framework

35 U.S.C. § 101 provides that "[w]hoever invents or discovers any new and useful process, machine, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." However, the Supreme Court has recognized that these broad categories contain an implicit exception: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, ––– U.S. –––, 133 S. Ct. 2107, 2116, 186 L. Ed. 2d 124 (2013) (internal quotation marks and citation omitted).

To determine whether a claim falls within the "abstract idea" exception, the Supreme Court has established a two-step framework: First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, ––– U.S. –––, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014). Second, if the claims are directed to patent-ineligible subject matter, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 1298, 1297, 182 L. Ed. 2d 321 (2012)). The Supreme Court has described this as a "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.*

#### ii. Step One

In evaluating step one, "the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)

(quoting *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015)). The Federal Circuit has also described this inquiry as an evaluation of the "focus" or "basic thrust" of the claims. *See Enfish*, 822 F.3d at 1335-36; *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016). The Federal Circuit has recognized that this process sometimes involves "close calls about how to characterize what the claims are directed to." *BASCOM*, 827 F.3d at 1349. Courts must tow the fine line between assessing a claim's "character as a whole" and "describing the claims at such a high level of abstraction and untethered from the language of the claims [such that it] all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1335, 1337.

Using these principles, the Federal Circuit has found that software claims are not directed to an abstract idea on a number of occasions. For example, it has found that claims which "purport to improve the functioning of the computer itself"—as opposed to those where "computers are invoked merely as a tool" to carry out an abstract process—are not directed to abstract ideas. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (claims relating to "an improved user interface for electronic devices, particularly those with small screens" were not abstract); *Finjan, Inc. v. Blue Coat Systems, Inc*., 879 F.3d 1299, 1305 (Fed. Cir. 2018) (claims directed to "behavior-based virus scanning" were not abstract); *Visual Memory LLC v. NVIDIA Corp*., 867 F.3d 1253, 1259-60 (Fed. Cir. 2017) (claims directed to an improved memory system which "focus[ed] on . . . the use of programmable operational characteristics that are configurable based on the type of processor" were not abstract); *Enfish*, 822 F.3d at 1336 (claims directed to a specific type of self-referential table for a computer database were not abstract). Relatedly, it has found that claims directed to a "new and useful technique" for performing a particular task were not abstract. *See, e.g.*, *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) ("claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform" were not abstract); *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc*., 827 F.3d 1042, 1048, 1050 (Fed. Cir. 2016) (claims directed to "a new and useful laboratory technique for preserving hepatocytes," a type of

liver cell, were not abstract); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (patents that automated part of a preexisting method for 3-D facial expression animation were not abstract because they "focused on a specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type.").

However, not all claims relating to computer technologies are not abstract. Where the focus of the claims is on "certain independently abstract ideas that use computers as tools" instead of "an improvement in computers as tools," claims may fail step one. *See, e.g.*, *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (claims relating to "deliver[ing] content to a handheld wireless electronic device" were directed to an abstract idea because they claimed "the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1140, 1149 (Fed. Cir. 2016) (claims related to logic circuit design in computer hardware were "drawn to the abstract idea of: translating a functional description of a logic circuit into a hardware component description of the logic circuit" because "they are so broad as to read on an individual performing the claimed steps mentally or with pencil and paper"); *Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 Fed. Appx. 968, 971-72 (Fed. Cir. 2016) (claims relating to migration of computer settings were directed to an abstract idea because "manual migration is an abstract idea" and the claims merely "automate[d] the migration of data between two computers"). Restricting older, abstract ideas to certain technological environments also does not make them not abstract. *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (observing that ineligible claims "merely implement an old practice in a new environment").

In applying these concepts, the Federal Circuit has cautioned that "the first step of the [Alice] inquiry is a meaningful one, i.e., . . . a substantial class of claims are not directed to a patent-ineligible concept." *Enfish*, 822 F.3d at 1335.

### iii. Step Two

In assessing step two, courts must "consider the elements of each claim both individually

and 'as an ordered combination'" and assess whether there are any "additional features" in the claims that constitute an "inventive concept." *Alice*, 134 S. Ct. at 2357. This inventive concept "must be significantly more than the abstract idea itself," *BASCOM*, 827 F.3d at 1349, "must be more than well-understood, routine, conventional activity," *DIRECTV*, 838 F.3d at 1262, "and cannot simply be an instruction to implement or apply the abstract idea on a computer." *BASCOM*, 827 F.3d at 1349. For example, it may be found in an "inventive set of components or methods," "inventive programming," or an inventive approach in "how the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). "Inventive concept" does not mean "novelty;" "[t]he mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

The Federal Circuit has found an inventive concept in several cases. For example, in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248, 1259 (Fed. Cir. 2014), the Federal Circuit found that claims that addressed the "Internet-centric problem" of third-party merchant advertisements that would "lure . . . visitor traffic away" from a host website (because clicking on the advertisement would redirect the visitor to the merchant's website) amounted to an inventive concept. This was so, the Federal Circuit reasoned, because the claims "specify how interactions with the Internet are manipulated to yield a desired result" such that the interactions are "not merely the routine or conventional use of the Internet." *Id*. at 1259. As another example, in *BASCOM*, 827 F.3d at 1350, the Federal Circuit found that the claims directed to Internet content filtering recited the inventive concept of "install[ing] a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." The court reasoned that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id*. The court found this to be the case there because the patents claimed a specific type of content filtering that took advantage of an ISP server's ability to associate internet requests with user accounts. *Id*.

Nevertheless, not all technological aspects of how a patented invention is implemented

supply a basis for finding an "inventive concept." A claim that simply takes an abstract idea and adds "the requirement to perform it on the Internet, or to perform it on a set of generic computer components . . . would not contain an inventive concept." *BASCOM*, 827 F.3d at 1350. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014), cert. denied, —— U.S. ——, 136 S. Ct. 119, 193 L. Ed. 2d 208 (2015) (no inventive concept because the claims simply recited "generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry"); *DIRECTV*, 838 F.3d at 1262 (no inventive concept because "[t]he claim simply recites the use of generic features of cellular telephones . . . as well as routine functions . . . to implement the underlying idea"). Limiting the field of use to a particular technological environment also does not supply an inventive concept. *Alice*, 134 S.Ct. at 2358 (noting that, under step two, "limiting the use of an abstract idea 'to a particular technological environment' " " "is not enough for patent eligibility"). *See, e.g.*, *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014) (abstract claims relating to transaction guarantees could not be saved from ineligibility because they were restricted to online transactions, as "[a]t best, that narrowing is an 'attempt[ ] to limit the use' of the abstract guarantee idea 'to a particular technological environment,' which has long been held insufficient to save a claim in this context").

Finally, as the Federal Circuit recently held, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. As such, it is improper to decide at the pleadings or summary judgment stage that claims lack an inventive concept where factual disputes remain as to whether particular elements are "well-understood, routine, [and/or] conventional." *See, e.g.*, *Aatrix Software*, 882 F.3d at 1129 (vacating dismissal pursuant to Rule 12(b)(6) where there were factual allegations suggesting that the claimed "data file" could be "an improvement in the importation of data from third-party software applications"); *Berkheimer*, 881 F.3d at 1370 (vacating grant of summary judgment where there was at least a factual dispute "regarding whether [certain claims] archive documents in an inventive manner that improves these aspects of the disclosed archival

United States District Court
Northern District of California

system").

Accordingly, the search for an inventive concept remains one that court must approach cautiously, "scrutiniz[ing] the claim elements more microscopically" than in step one. *Elec. Power Grp.*, 830 F.3d at 1354.

### iv. Preemption

In addition to these principles, several other considerations may be helpful in conducting a § 101 analysis: First, the Supreme Court has recognized that the "concern that undergirds [the] § 101 jurisprudence" is preemption. *Alice*, 134 S. Ct. at 2358. If a claim is so abstract so as to "pre-empt use of [the claimed] approach in all fields, and would effectively grant a monopoly over an abstract idea" is not patent-eligible. *Bilski v. Kappos*, 561 U.S. 593, 612, 130 S. Ct. 3218, 3231, 177 L. Ed. 2d 792 (2010). However, the inverse is not true: "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *FairWarning IP*, 839 F.3d at 1098 (internal quotation marks and citation omitted).

Second (and relatedly), "claims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101." *DIRECTV*, 838 F.3d at 1265. For example, in *Elec. Power Grp.*, 830 F.3d at 1356, the Federal Circuit found that claims directed to "any way of effectively monitoring multiple sources on a power grid" instead of "some specific way of enabling a computer to monitor data from multiple sources across an electric power grid" did not contain an inventive concept. The Federal Circuit has noted that this framework "is one helpful way of double-checking the application of the Supreme Court's framework to particular claims—specifically, when determining whether the claims meet the requirement of an inventive concept in application." *Id.*

## III. DISCUSSION

With these principles in mind, the Court turns to the claims at issue. In its motion, HTC contends that the Asserted Patents contain only minimal differences in their claims which do not impact the § 101 analysis. Mot. 6-7. LI does not appear to disagree, as it only addresses the claims collectively in its opposition. *See* Opp'n 15-21. On its own review, the Court agrees with

HTC that the Asserted Claims are substantially similar. Accordingly, it will analyze the Asserted Claims collectively, using claim 1 of the '067 patent as the representative claim.

### A. Step One

At step one of the *Alice* analysis, the Court assesses the "character as a whole" of the claims to determine "whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355; *Enfish*, 822 F.3d at 1335 (citation omitted).

HTC argues that the claims of the Asserted Patents are directed to the abstract idea of "providing communication information based on location and other user information." Mot. 5-9. HTC contends that this is no less abstract than "tailoring content based on the viewers location or address," which the Federal Circuit deemed abstract in *Intellectual Ventures*, 792 F.3d at 1369-70. HTC also argues that the claims of the Asserted Patents are not directed to a solution of a technological problem because tailoring information is a fundamental process that precedes the computer era, and the claims are not sufficiently specific to recite a specific solution. Mot. 9-12.

LI counters that the claims of the Asserted Patents are not directed to an abstract idea, but instead to "specific systems and methods that use a location server associated with a system such as a WiFi network (and not a positioning system like GPS) to obtain a phone's current location, and a phone's 'datastore' or memory (as opposed to a carrier's records), in order to provide and refresh location-relevant communication services on a phone's display as the phone's current location changes." Opp'n 3. As such, LI argues, the claims of the Asserted Patents pertain to a specific solution to technical problems which arise in the realm of using location-based technology in conjunction with displaying particular communication services on a phone. *Id.* 15-17.

The "character as a whole" of the claims of the Asserted Patents lies somewhere in between the parties' characterizations. The Court agrees with HTC that the claimed invention seeks to "provid[e] communication information based on location and other user information." However, the solution is more specific than this. For example, the current location is obtained from a "location server" by a "function selector." '067 patent, col. 8 ll. 13-15. In addition, the selecting is done using "functions" which are stored in the "datastore." *Id.*, col. 8 ll. 9-10, 16-20.

Case No.: 5:17-cv-06437-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

However, at the same time, the claims also are not as specific as LI contends: nothing in the claims or specification requires that the "datastore" be local to the phone. *See id.*, col. 8 ll. 42 ("function selector . . . *connects* to datastore") (emphasis added). In addition, nothing confines the "location server" connection to WiFi. *See id.*, col. 8 ll. 49-59 (describing a wide variety of options for connecting to the "location server," including a cellular data network, Bluetooth, and a "global location satellite network"). Putting all these observations together, the Court concludes that the claims of the Asserted Patents are best characterized as directed to: refreshing location-relevant communication services on a phone's display by obtaining a current location from a location server, selecting communication services using logic in a datastore, and refreshing the display.

The question then becomes whether this is an abstract idea. The Federal Circuit's recent decision in *Core Wireless*, 880 F.3d at 1363 ends this inquiry. In *Core Wireless*, the Federal Circuit evaluated claims for "improved display interfaces, particularly for electronic devices with small screens like mobile telephones." *Id.* at 1359. This display involved the use of an "application summary" which display[ed] "a limited list of common functions and commonly accessed stored data which itself can be reached directly from the main menu listing some or all applications." *Id.* In evaluating patent eligibility, the Federal Circuit observed that the claim limitations "disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." *Id.* at 1363. The Court observed that this provided "an improved user interface for electronic devices, particularly those with small screens" where display real estate was at a premium. *Id.* Because of this, they were "directed to an improved user interface for computing devices, not to the abstract idea of an index." *Id.* at 1362.

It is hard to distinguish this case from *Core Wireless*. Both relate to the computer technology of user interfaces. *See* '067 patent, col. 1 ll. 7-9. Both purport to solve the same problem within the realm of user interfaces: limited display space on electronic devices with small screens. *See id.*, col. 1 ll. 19-21 ("Due to the many available services, the user often has to navigate through many menu displays in order to find a desired service."). And both claim a

specific manner of solving this problem.  In *Core Wireless*, 880 F.3d at 1362-63, the claims "specif[ied] a particular manner by which the summary window must be accessed," "require[d] the application summary window list a limited set of data," and "restrain[ed] the type of data that can be displayed in the summary window."  Here, the claims recite a specific manner of limiting the information which should be displayed: the "communication services" must be selected according to one or more "function[s]" that are stored in a "datastore," which are in turn identified using the phone's "current location" which must be obtained by "connect[ing] the telephone to a location server."  *See id.*, col. 8 ll. 9-20.  As such, the claims at issue do more than simply state a result (i.e., display communication services according to current location); they also recite the way in which it is accomplished (i.e., using location retrieved from the location server and functions stored in the datastore).  Accordingly, because the specific improvement to the technology of user interfaces claimed in *Core Wireless* was not an abstract idea, the Court must conclude that the similarly specific improvement to user interfaces claimed here is also not an abstract idea.

In reaching this conclusion, the Court is mindful that the reasoning of *Core Wireless* may rest on narrow ground.  Other Federal Circuit cases confirm that not every purported technological improvement is patent eligible.  *See, e.g.*, *DIRECTV*, 838 F.3d at 1262 (claims relating to "deliver[ing] content to a handheld wireless electronic device" were directed to an abstract idea); *Synopsys*, 839 F.3d at 1140, 1149 (claims related to logic circuit design in computer hardware were "drawn to the abstract idea of: translating a functional description of a logic circuit into a hardware component description of the logic circuit").  Nevertheless, *Core Wireless* at the very least requires that a specific solution, reciting specific implementation detail, which purports to solve a problem within the technology of user interfaces in electronic devices with small screens, is not abstract.  On this point, the claims of the Asserted Patents cannot be distinguished.  Thus, the Court concludes that they are not directed to an abstract idea.

HTC's arguments to the contrary are not persuasive.  First, HTC argues that this case is distinguishable from *Core Wireless* because, unlike the patents at issue in *Core Wireless*, the Asserted Patents do not identify a technological problem to be solved.  Mot. 9-10.  The Court

Case No.: 5:17-cv-06437-EJD
ORDER DENYING MOTION TO DISMISS

disagrees; as discussed above, the Asserted Patents seek to solve the same technological problem as the *Core Wireless* patents: limited display space on electronic devices with small screens. '067 patent, col. 1 ll. 19-21. Second, HTC argues that this case is distinguishable from *Core Wireless* because the claims at issue here are not as specific as those at issue in *Core Wireless*. Mot. 11-12. The Court disagrees on this point as well. The claims in *Core Wireless* and the claims at issue here accomplish specificity in different ways, but they both do so to substantially the same degree. In *Core Wireless*, the claims at issue recited specific graphical characteristics of the improved user interface (e.g., an "application summary window" which must be "reached directly" from the main menu, which contains "data" which is "selectable to launch the respective application"). *Core Wireless*, 880 F.3d at 1362-63. Here, the claims at issue recite specific implementation characteristics as to how the information to be displayed is limited for the small screen (e.g., using a "location server" to supply the current location and using "functions" stored in a "datastore" to determine which communication services should be selected). *See, e.g.*, '067 patent, col. 8 ll. 9-20. As such, the claims of the Asserted Patents recite the solution with a similar level of specificity to the *Core Wireless* claims and cannot be distinguished on this basis.

Accordingly, the Court concludes at step one of the *Alice* framework that the claims of the Asserted Patents are not directed to an abstract idea.

### B. Step Two

The Court need not reach step two. *Thales*, 850 F.3d at 1349 ("Because we find the claims are not directed to an abstract idea, we need not proceed to step two."); *Enfish*, 822 F.3d at 1339 ("[W]e think it is clear for the reasons stated that the claims are not directed to an abstract idea, and so we stop at step one.").

## IV. CONCLUSION

Because the claims of the Asserted Patents are not directed to an abstract idea, HTC's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: April 6, 2018

_____
EDWARD J. DAVILA
United States District Judge